Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| OXFORD HOUSE, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOWNSHIP OF NORTH BERGEN, <br><br> Defendant. | Civil Action No.: 21-19260 (ES) (ESK) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Oxford House, Inc.'s motion for a preliminary injunction. (D.E. Nos. 1-9 & 8). Defendant Township of North Bergen ("Defendant" or the "Township") opposes the motion. (D.E. No. 23). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **DENIES** the motion.

**I.    BACKGROUND**

Plaintiff is an organization that establishes affordable housing for individuals recovering from substance abuse and/or alcoholism across the United States. (D.E. No. 1 ("Complaint" or "Compl.") ¶ 4). The Oxford House model is designed to provide persons recovering from alcoholism or other forms of substance abuse with a living arrangement that aids recovery by directly combatting loneliness and isolation. (*Id*. ¶ 28). After Plaintiff secures a lease, the residents of the respective Oxford House take full responsibility. (*Id*. ¶ 20). There is no paid staff, counseling, therapy, or house manager on site. (*Id*.). The residents have a direct landlord-tenant relationship with the lessor and are responsible for their equal share of the rent. (*Id*. ¶¶ 22 & 24).

1

They are also equally responsible for the dwelling's utilities and housekeeping functions. (*Id.* ¶¶ 25 & 28). The residents make all decisions as to the occupancy and functioning of the property. (*Id.* ¶¶ 25 & 26). So long as a resident does not use drugs or alcohol, pays rent on time, and abides by the norms of the house, the resident is free to stay indefinitely. (*Id.* ¶ 27). Since 2001, Plaintiff has contracted with the State of New Jersey to administer funding for its group homes. (*Id.* ¶¶ 15 & 16).

On February 8, 2021, Babu Balarmiah signed a lease to rent the second-floor unit of 1109 8th Street in North Bergen, New Jersey ("the Property") to a maximum of six men for use as an Oxford House for a monthly rent of $2,300. (*Id.* ¶ 18). The prospective residents would be responsible for running the Oxford House at the Property under the Oxford House model. (*Id.* ¶¶ 23 & 25). The Property is a two-family dwelling, which is defined by a Township ordinance as "[a] building containing two dwelling units only." (D.E. No. 23-2, Ex. A to Hammer Cert. at 18).[1] Defendant requires all landlords or their agents to apply for a Certificate of Occupancy ("COO") prior to the tenant taking possession of the premises. (Compl. ¶ 30).

On February 25, 2021, Mr. Balarmiah's realtor, Irene Hsieh, submitted an application for a COO on behalf of Plaintiff. (*Id.* ¶ 33). A list of prospective residents was included in the submission. *(Id.* & D.E. No. 23-2, Ex. A to Hammer Cert. at 8–10). Also on February 25, 2021, Ms. Hsieh sent Peter Hammer, the Director of Community Improvement for the Township, an email containing information on the Oxford House concept. (Compl. ¶ 34 & D.E. No. 23-2, Ex. B to Hammer Cert. at 26–30). The informational literature indicated that "individuals with a Charter from Oxford House, Inc. will lease a *single-family* house." (D.E. No. 23-2, Ex. B to Hammer Cert. at 28 (emphasis added)). On or about March 1, 2021, Mr. Hammer informed Ms.

---

[1] Unless otherwise noted, all references to Docket Entry Number 23-2 refer to the pagination automatically generated by the Court's CM/ECF system.

2

Hsieh by telephone that the application was denied because Plaintiff's use of the Property would violate the Township's zoning ordinances. (Compl. ¶¶ 35 & 38). Mr. Hammer confirmed the same by email. (D.E. No. 23-2, Ex. B to Hammer Cert. at 31).

On March 4, 2021, Plaintiff's counsel contacted Defendant to request that the prospective residents be treated as the functional equivalent of a family. (Compl. ¶ 39 & D.E. No. 1-3, Ex. C at 2)). On March 9, 2021, Defendant's counsel responded by acknowledging that the prospective residents functioned as the equivalent of a family, but that the COO had been denied because it was Defendant's understanding that Plaintiff would be operating a "Community Residence" in a two-family dwelling in violation of N.J.S.A. § 40:55D-66.1 (the "Community Residence provision").[2] (Compl. ¶ 41 & D.E. No. 1-4, Ex. D). Defendant's counsel noted that "[i]f this were a single-family dwelling, the [COO] would have certainly been granted." (Compl. ¶ 43 & D.E. No. 1-4, Ex. D). Defendant's counsel further advised Plaintiff that it may appeal the decision to the Township's Zoning Board. (D.E. No. 1-4, Ex. D at 3). By letter dated March 11, 2021, Plaintiff's counsel replied, stating that the prospective Oxford House is not a "Community [r]esidence" as that term is statutorily defined. (Compl. ¶¶ 45–47 & D.E. No. 1-6, Ex. F). Plaintiff did not receive a response to its March 11, 2021 letter. (*See* Compl. ¶ 48). Over four months later,

---

[2] The Community Residence provision provides:

> Community residences for persons with developmental disabilities, community shelters for victims of domestic violence, community residences for persons with terminal illnesses, community residences for persons with head injuries, and adult family care homes for persons who are elderly and *adults with physical disabilities* shall be a permitted use in all residential districts of a municipality, and *the requirements therefor shall be the same as for single family dwelling units located within such districts*.

N.J.S.A. § 40:55D-66.1 (emphases added). It is unclear whether the Community Residence provision expressly prohibits the operation of an Oxford House in a two-family dwelling. However, that issue is not squarely before the Court.

3

on July 20, 2021, Plaintiff informed Defendant that it was prepared to take legal action if the COO was not granted. (*Id.* ¶ 49 & D.E. No. 1-7, Ex. G).

Over three months later, on October 22, 2021, Plaintiff filed the instant action raising the following claims: (i) violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602, *et seq.* (Count I); (ii) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq.* (Count II); and (iii) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq*. (Count III). (Compl. ¶¶ 67–79). Along with the Complaint, Plaintiff also filed a request for a temporary restraining order, preliminary injunction, and expedited hearing. (*Id.* ¶¶ 80–83 & D.E. No. 1-8). Plaintiff sought to temporarily enjoin Defendant from preventing disabled men from taking possession of and occupying the Property and requested a preliminary injunction ordering Defendant to issue a COO to Plaintiff for operation of an Oxford House. (D.E. No. 1-8 at 2). On October 25, 2021, the Court converted Plaintiff's request for temporary restraints to a motion for a preliminary injunction. (D.E. No. 2). Expedited discovery commenced and the motion was fully briefed in due course. (D.E. No. 1-9 ("Mov. Br."); D.E. No. 23 ("Opp."); D.E. No. 24 ("Reply")). Discovery is ongoing but complete for purposes of this motion. (D.E. No. 32).

## II.     LEGAL STANDARD

A court has discretion to grant or deny a motion for a preliminary injunction. *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). A preliminary injunction is an extraordinary remedy that should be granted only in limited circumstances. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994). The primary purpose of a preliminary injunction is the maintenance of the status quo until a decision on the merits of a case is rendered. *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994). Where, as here, the movant requests to alter the status quo, that party faces particular scrutiny

under a heavy burden. *See Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980); *see also Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008).

Upon a finding that "a discriminatory housing practice has occurred or is about to occur," a court "may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613(c)(1). To grant such relief, a court considers whether (i) the movant has shown a likelihood of success on the merits; (ii) the movant will be irreparably injured by the denial of the relief; (iii) the grant of an injunction will result in substantial harm to the nonmoving party; and (iv) granting relief is in the public interest. *Sullivan v. City of Pittsburgh*, 811 F.2d 171, 181 (3d Cir. 1987), *cert. denied*, 484 U.S. 849 (1987). The first two factors are gateway factors, and only if those factors are shown does a court need to consider the last two factors. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017); *see also Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

##### i. New Jersey Law Against Discrimination

First, Plaintiff alleges that Defendant is violating the NJLAD by denying housing to prospective residents. (Compl. ¶¶ 77–79). Defendant responds that Plaintiff has not established a prima facie case of discrimination and that, in any event, the Court lacks subject matter jurisdiction over Plaintiff's NJLAD claim. (Opp. at 18–20; *id.* at 18 n.4). In response, Plaintiff concedes that its claim, pursuant to N.J.S.A. § 10:5-12.5, is not cognizable in federal court. (Reply at 14).[3]

---

[3] Plaintiff cites generally to N.J.S.A. § 10:5-1, *et seq.*, in the Complaint. (Compl. ¶ 78). In its moving brief, after conceding that a § 10:5-12.5 claim is not cognizable in federal court, Plaintiff points to § 10:5-12(g)(1) to argue

5

Under N.J.S.A. § 10:5-12.5(a), it is unlawful for a municipality "to exercise the power to regulate land use or housing in a manner that discriminates" on the basis of, among other things, disability. However, unlike claims brought under the general enforcement provisions of the NJLAD, which are routinely resolved in federal courts, claims brought under § 10:5-12.5(a) "may only be enforced by initiating an action in Superior Court . . . ." *See* § 10:5-12.5(b). Courts in this District have interpreted § 10:5-12.5(b) as a bar to subject matter jurisdiction over § 10:5-12.5(a) claims in federal court. *See, e.g.*, *Hansen Found., Inc. v. City of Atlantic City*, 504 F. Supp. 3d 327, 342 (D.N.J. 2020) (collecting cases); *Kessler Inst. for Rehab., Inc. v. Mayor and Council of the Borough of Essex Fells*, 876 F. Supp. 641, 664–65 (D.N.J. 1995) ("This Court concludes that the New Jersey Superior Court has exclusive jurisdiction over [p]laintiffs' NJLAD claims. Given the strong state interests involved in land use regulation . . . it is entirely plausible that the New Jersey Legislature intended to avoid federal court interference in this area.").

Accordingly, Plaintiff's NJLAD claim is dismissed *sua sponte* for lack of subject matter jurisdiction. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

### ii.     FHA & ADA

Second, Plaintiff alleges that Defendant violated the FHA and the ADA by denying the COO. (Compl. ¶¶ 67–76). The FHA, passed by Congress as Title VIII of the Civil Rights Act of 1968 and amended by the Fair Housing Amendments Act of 1988, makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1).[4] The ADA prohibits all discrimination

---

that the Court nonetheless has subject matter jurisdiction. (Reply at 14). However, § 10:5-12(g)(1) is inapplicable because it applies to lessees refusing to lease real property on the basis of, among other things, disability, and Defendant is not a lessee. Rather, Defendant is more appropriately considered a municipality subject to § 10:5-12.5. Plaintiff does not cite to any other section of the statute in its briefing to support its position for subject matter jurisdiction over its NJLAD claim.

[4]     Specifically, the Fair Housing Amendments Act of 1988 ("FHAA") extended the FHA's protections to individuals with handicaps. Throughout this Opinion, the Court refers to the FHA as amended by the FHAA.

based on disability by public entities. *Id.* § 12132. The FHA and the ADA's requirements are "essentially the same," allowing courts to apply the FHA analysis to ADA claims. *Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 914 (D.N.J. 2019); *see also Lapid Ventures, LLC v. Twp. of Piscataway*, No. 10-6219, 2011 WL 2429314, at *5 (D.N.J. June 13, 2011) (citing *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 45–46 (2d Cir. 2002)).

As a predicate to success on the merits for claims under both the FHA and ADA, a plaintiff must show that the prospective residents are "handicapped" as that term is statutorily defined. *See 901 Ernston Rd., LLC v. Borough of Sayreville Zoning Bd. of Adjustment*, No. 18-2442, 2018 WL 2176175, at *5 (D.N.J. May 11, 2018). "Handicap" is defined as "a physical or mental impairment which substantially limits one or more such person's major life activities . . . but such term does not include current, illegal use of or addiction to a controlled substance." 42 U.S.C. § 3602(h). Plaintiff asserts, and Defendant does not dispute, that the prospective residents are individuals with handicaps under the FHA. (Mov. Br. at 2; Opp. at 14). *See Oxford House, Inc. v. Twp. of Cherry Hill*, 799 F. Supp. 450, 460 (D.N.J. 1992) (holding that residents of the Oxford House met the statutory definition of "handicap" within the meaning of the FHA); *see also United States v. Borough of Audubon*, 797 F. Supp. 353, 359 (D.N.J. 1991) (finding recovering addicts were properly considered "handicapped"); *901 Ernston Rd., LLC*, 2018 WL 2176175, at *5 (noting courts in this Circuit deem recovering addicts as handicapped). Accordingly, the Court finds that the prospective residents are individuals with handicaps for purposes of the FHA and the ADA.

A plaintiff may prove a violation of the FHA or ADA under one of three theories: (i) disparate treatment, or intentional discrimination; (ii) disparate impact; or (iii) failure to make a reasonable accommodation. *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d

7

Cir. 2005). Claims brought under the FHA are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g.*, *Wind Gap*, 421 F.3d at 176 n.5 (collecting cases). A plaintiff must first make a prima facie showing under one of the three theories. *See Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains*, 284 F.3d 442, 466–67 (3d Cir. 2002). Thereafter, the burden shifts to the defendant to show that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives were available. *Id.* at 467. Once the defendant has made such a showing, the burden shifts to the plaintiff to establish that the reason asserted by the defendant is merely a pretext for discrimination. *Id.* at 458. Here, Plaintiff proceeds only under a theory of disparate treatment.[5]

Under the disparate treatment theory, a plaintiff must demonstrate that the defendant's alleged discrimination was because of a handicap. *Wind Gap*, 421 F.3d at 178. "Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action." *431 East Palisade Avenue Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting *Wind Gap*, 421 F.3d at 177). In showing discriminatory purpose as a motivating factor, the plaintiff "is only required to 'show that a protected characteristic played a role in the defendant's decision to treat [the individual] differently.'" *Wind Gap*, 421 F.3d at 177 (quoting *Cmty. Hous. Trust v. Dep't of Consumer & Regul. Affs.*, 257 F. Supp. 2d 208, 225 (D.D.C. 2003)).

To establish disparate treatment, Plaintiff argues that Defendant denied the COO based on the prospective residents' status as recovering drug and alcohol addicts. (Mov. Br. at 10–11 &

---

[5] The Court notes that despite Plaintiff's assertion in its reply brief that it has shown a likelihood of success on two separate theories—disparate treatment and disparate impact—Plaintiff raises only a disparate treatment theory in its moving brief. (*Compare* Mov. Br. at 9–11, *with* Reply at 12). Nonetheless, the Court briefly addresses disparate impact below.

Reply at 12). Specifically, Plaintiff argues that Defendant intentionally interpreted the Community Residence provision differently as to the prospective disabled residents than it would as to non-disabled residents. (Mov. Br. at 10–11). In response, Defendant argues that there is no evidence of discriminatory intent or purpose underlying its denial of the COO. (Opp. at 15–17). Defendant specifically raises two bases for the denial: first, that New Jersey law and the Community Residence provision expressly prohibits Plaintiff from operating an Oxford House in a two-family dwelling, and second, that the Oxford House model itself prohibits Plaintiff from operating an Oxford House in a two-family dwelling. (*See id.* at 2 & 11–13). While the merits of the denial are unclear, the Court agrees with Defendant that Plaintiff fails to establish that the denial was motivated by a discriminatory purpose under the FHA and the ADA.

Plaintiff has not adduced sufficient evidence to show that the prospective residents' status as handicapped played any role in Defendant's denial of the COO. Stated differently, the record does not reflect that Defendant's denial of the COO was discriminatory in purpose or intent. Defendant denied the COO based on a neutral interpretation of the Community Residence provision. (*See* Opp. 11–14). Specifically, Defendant considered the prospective residents as "adults with physical disabilities" under the provision because alcoholism, generally understood as presenting symptoms of disability, is considered a handicap under the NJLAD. (*See id.* at 11 (citing *Clowes v. Terminix Int'l, Inc.*, 538 A.2d 794, 803–04 (N.J. 1988)). Defendant therefore concluded that the prospective residents, as "adults with physical disabilities" under the Community Residence provision, were required to live in a single-family dwelling under that provision. *See* N.J.S.A. § 40:55D-66.1; (*see also* Opp. at 12). Even if Defendant's reliance on the

9

Community Residence provision is not entirely clear, Plaintiff does not cite to evidence that suggests the denial was rooted in discriminatory purpose or intent.[6]

Such a factual record does not show a likelihood of success on Plaintiff's claim for discriminatory treatment. *Cf. Oxford House-Evergreen*, 769 F. Supp. at 1343 (finding discriminatory intent where a zoning officer announced Oxford House-Evergreen's use was permitted but then reversed her determination after neighborhood residents and City Council expressed opposition toward recovering addicts); *Borough of Audubon*, 797 F. Supp. at 360–61 (finding discriminatory intent based on town officials' statements that they agreed with community opposition to recovering addicts); *901 Ernston Rd., LLC*, 2018 WL 2176175, at *6 (finding evidence of discriminatory intent given testimony and commentary of members of the Zoning Board and community demonstrating opposition to plaintiff's opening a neighborhood-based recovery campus for recovering addicts).

To the extent that Plaintiff raises a disparate impact theory, this argument similarly fails. A plaintiff may establish a prima facie disparate impact claim by showing that the action had a greater adverse impact on a protected group than on others, regardless of discriminatory intent. *Cherry Hill*, 799 F. Supp. at 461. For example, a disparate impact claim typically is "demonstrated

---

[6] For starters, Plaintiff cites to several cases involving other Oxford Houses to argue that Defendant's application of the Community Residence provision evinced discriminatory intent. (Mov. Br. at 6–8 (citing *Borough of Audubon*, 797 F. Supp. at 355; *Cherry Hill*, 799 F. Supp. at 452; *Oxford House-Evergreen v. City of Plainfield*, 769 F. Supp. 1329, 1332 (D.N.J. 1991); and *Cherry Hill Twp. v. Oxford House, Inc.*, 621 A.2d 952, 954 (N.J. Super. Ct. App. Div. 1993))). These cases, however, are distinguishable because they involve applications to reside in single-family homes—unlike the two-family home at issue here— and are therefore inapposite.

Furthermore, the record supports Defendant's argument that the denial was based on both its interpretation of the Community Residence provision and the Oxford House literature provided to Mr. Hammer. Indeed, Mr. Hammer's testimony suggests that the Oxford House literature informed Defendant's decision to deny the COO. (D.E. No. 24-1, Deposition of Peter Hammer ("Hammer Dep.") at 23:21–24:1–2 ("Q. Can you tell us why you denied [the COO]? A. All of the information I got from Oxford House said that it was a single family residence. . . . This is a two-family house."); 25:3–9, 15–18 & 49:19–50:3; D.E. No. 23-2, Ex. B to Hammer Cert. at 28 ("To start an Oxford House, a group of recovering individuals with a Charter from Oxford House, Inc. will lease a ***single family house*** in a good neighborhood to pursue long term recovery as a group . . . ." (emphasis added))).

by statistics, and a *prima facie* case may be established where gross statistical disparities can be shown." *Oxford Invs., L.P. v. City of Philadelphia*, 21 F. Supp. 3d 442, 457 (E.D. Pa. 2014) (quoting *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly,* 658 F.3d 375, 382 (3d Cir. 2011)). Plaintiff provides no evidence—statistical or otherwise—to support the notion that Defendant's decision had a greater adverse impact on a protected group, and instead rests on mere speculation. Although Plaintiff attempts to draw a comparison to *Cherry Hill*, the instant matter is distinguishable. In *Cherry Hill*, the township denied plaintiffs a certificate of occupancy because the township refused to recognize them as a "single family" under the township's zoning ordinance. 799 F. Supp. at 452. The Court found that plaintiffs had established a prima facie disparate impact claim because the township's interpretation of a "family" imposed "more stringent requirements on groups of unrelated individuals wishing to live together in a rental property than on individuals related by blood or marriage." *Id.* at 461. Unlike the township in *Cherry Hill*, Defendant is not refusing to consider the prospective residents to be the functional equivalent of a family. *See id.* Rather, Defendant acknowledges that the prospective residents are the functional equivalent of a family, and that if Plaintiff's application pertained to a single-family home, it would generally be approved. (D.E. No. 1-4, Ex. D; Hammer Dep. at 49:19–50:3; Opp. at 13). Because Plaintiff fails to make a prima facie showing of disparate impact, the Court need not reach the remaining steps in the burden-shifting framework. *See McDonnell Douglas Corp.*, 411 U.S. at 802.[7]

---

[7] Defendant further argues that Plaintiff's claims are not ripe for adjudication because it failed to file an appeal challenging the COO determination with the Township's Zoning Board. (Opp. at 20 (citing *Hansen*, 504 F. Supp. 3d at 340–41)). The Court notes that this argument is misplaced. In *Hansen*, the Court determined that, unlike disparate treatment and disparate impact claims, "plaintiffs who bring reasonable accommodations claims against localities must usually first seek redress through variance applications to the local land use authority." 504 F. Supp. 3d at 340–41 (quoting *Lapid-Laurel*, 284 F.3d at 451 n.5)). Neither *Hansen* nor *Lapid-Laurel* require a plaintiff to exhaust administrative remedies for alleged FHA violations brought under disparate treatment or disparate impact theory. Because Plaintiff does not bring a reasonable accommodation claim, the Court rejects this argument.

11

Therefore, Plaintiff does not show a likelihood of success on the merits of its FHA and ADA claims under either disparate treatment or disparate impact theory.

### B. Irreparable Harm

As indicated above, irreparable harm "is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. This is not an easy burden." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir. 2000) (citations omitted). "Affirmative relief that alters, rather than maintains, the status quo may also be granted, but 'the burden on the moving party is particularly heavy.'" *Yates*, 404 F. Supp. 3d at 932 (quoting *Am. Fin. Res., Inc. v. Nationstar Mortgage, LLC*, 2016 WL 8201959, at *2 (D.N.J. 2016)).

Plaintiff argues that it is entitled to a presumption of irreparable harm because violation of the FHA necessarily results in irreparable harm. (Reply at 6–7). "[B]ecause the [FHA] authorizes injunctive relief, some courts find a rebuttable presumption of irreparable harm where there is a substantial likelihood the defendant violated the FHA." *901 Ernston Rd., LLC*, 2018 WL 2176175, at *4 (citation omitted); *see Assisted Living Assocs. of Moorestown, LLC v. Moorestown Twp.*, 996 F. Supp. 409, 438–39 (D.N.J. 1998). However, because Plaintiff has failed to make the threshold showing of likelihood of success on the merits of its FHA claim under the first gateway factor, *see Reilly*, 858 F.3d at 179, irreparable harm cannot be presumed.

Plaintiff also argues that it is irreparably harmed because six men in recovery from alcohol and substance use are being denied sober housing and the benefit of a therapeutic and supportive living environment. (Mov. Br. at 4–9). Defendant contends that Plaintiff cannot demonstrate irreparable harm after waiting seven months to pursue injunctive relief. (Opp. at 9). Defendant further contends that because Plaintiff's six prospective residents no longer seek to occupy the

12

Property, Plaintiff cannot demonstrate irreparable harm. (*Id.* at 10). This argument, however, is unavailing because the Property remains vacant for similarly situated individuals to occupy. *See Easter Seal Soc. of N.J., Inc. v. Twp. of N. Bergen*, 798 F. Supp. 228, 237 (D.N.J. 1992) ("Although plaintiffs have yet to identify the 'John Does' who will live in the prospective residence, there is no doubt that for each day that this project is delayed, eight protected individuals are forced to move into other environments which endanger their recent recovery."); *see also 901 Ernston Rd., LLC*, 2018 WL 2176175, at *4–5 (collecting cases). Consistent with Plaintiff's position, the Third Circuit has recognized that "an action that jeopardizes the recovery process for a group of alcoholics and threatens to push them into relapse causes just the kind of irreparable harm that justifies preliminary injunctive relief." *Cherry Hill*, 799 F. Supp. at 463; *see also Sullivan*, 811 F.2d 179–80.

In sum, even if Plaintiff were to demonstrate irreparable harm, it has not established a likelihood of success on the merits of its FHA and ADA claims based on the current record. Thus, Plaintiff is not entitled to a preliminary injunction. Nonetheless, the Court will briefly address the remaining arguments.

### C.    Substantial Harm to the Nonmoving Party & Public Interest

As to the third factor, Plaintiff argues that should the injunction not be entered, the harm of relapse and the resulting increased burden on the municipality's police resources would harm Defendant. (Mov. Br. at 11–12). As to the fourth factor, Plaintiff argues that the injunction will benefit the public by promoting the recovery of alcoholics and addicts in the context of a "growing substance abuse problem in the State of New Jersey." (*Id.* at 12–13).

The Court recognizes that, were the first two requisite factors for a preliminary injunction met, preliminary relief would not generally cause Defendant to suffer substantial harm in this

13

context. *See, e.g.*, *Easter Seal Soc'y of N.J.*, 798 F. Supp. at 238 (noting that the proposed community residence would ultimately save taxpayer money). And the recovery of men and women from alcoholism and substance abuse is a cause the public has an interest in. *Oxford House-Evergreen*, 769 F. Supp. at 1345–46 (finding that the defendants' interests in enforcing a zoning ordinance did not outweigh the plaintiffs' interest in recovery); *Cherry Hill*, 799 F. Supp. at 465 ("Congress has directly endorsed the Oxford House itself as an organization worthy of public support because of its role in helping to stem the national epidemic of alcohol and drug abuse."). Nonetheless, without having shown a likelihood of success on the merits of its claims, the Court cannot grant Plaintiff preliminary injunctive relief. *See, e.g.*, *Tenafly Eruv Ass'n, Inc.*, 309 F.3d at 157.

IV.  **CONCLUSION**

For the reasons stated above, Plaintiff's motion for a preliminary injunction is **DENIED**. Plaintiff's NJLAD claim is **DISMISSED** *sua sponte* for lack of subject matter jurisdiction. An appropriate Order follows.

**Dated:** June 29, 2022

*s/Esther Salas*
**Esther Salas, U.S.D.J.**