**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OXFORD HOUSE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TOWNSHIP OF NORTH BERGEN,<br><br>Defendant. | Civil Action No.: 21-19260 (ES) (CLW)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is Defendant Township of North Bergen's ("Defendant" or the "Township") motion to dismiss the Amended Complaint of Plaintiff Oxford House, Inc. ("Plaintiff" or "OHI") (*see* D.E. No. 51 ("Am. Compl." or "Amended Complaint")) pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 53 ("Motion")). OHI asserts claims for discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. § 3602, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq.* (Am. Compl). The Court has carefully considered the parties' submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background[1]

Plaintiff is an organization that establishes affordable housing for individuals recovering from substance abuse and/or alcoholism across the United States.  (Am. Compl. ¶¶ 4–5).  The Oxford House model is designed to provide persons recovering from alcoholism or other forms of substance abuse with a living arrangement that aids recovery by directly combatting loneliness and isolation.  (*Id.* ¶ 51).  After Plaintiff secures a lease, the residents of the respective Oxford House take full responsibility for their living situation.  (*Id.* ¶¶ 45–48).  There are no paid staff, counseling, therapy, or house managers on site.  (*Id.* ¶ 30).  The residents have a direct landlord-tenant relationship with the lessor and are responsible for their equal share of the rent.  (*Id.* ¶¶ 39 & 43).  They are also equally responsible for the dwelling's utilities and housekeeping functions.  (*Id.* ¶¶ 39–40).  The residents make all decisions as to the occupancy and functioning of the property.  (*Id.* ¶¶ 44–45).  So long as a resident does not use drugs or alcohol, pays rent on time, and abides by the norms of the house, the resident is free to stay indefinitely.  (*Id.* ¶ 50).  Since 2001, Plaintiff has contracted with the State of New Jersey to administer funding for its group homes.  (*Id.* ¶¶ 20–21).

On February 8, 2021, Babu Balarmiah signed a lease to rent the second-floor unit of 1109 8th Street in North Bergen, New Jersey ("the Property") to a maximum of six men for use as an Oxford House for a monthly rent of $2,300.  (*Id.* ¶ 25).  Defendant requires all landlords or their agents to apply for a Certificate of Occupancy prior to the tenant taking possession of the premises.  (*Id.* ¶ 57).  On February 25, 2021, Mr. Balarmiah's realtor, Irene Hsieh, submitted an application for a Certificate of Occupancy on behalf of Plaintiff.  (*Id.* ¶ 60).  A list of prospective residents

---

[1]       The following allegations are taken from the Amended Complaint, which the Court accepts as true for the purposes of deciding Defendant's motion to dismiss.

was included in the submission.  (*Id.* ¶ 61).  Also on February 25, 2021, Ms. Hsieh sent Peter Hammer, the Director of Community Improvement for the Township, an email containing information on the Oxford House concept.  (*Id.* ¶ 62).  On or about March 1, 2021, Mr. Hammer informed Ms. Hsieh by telephone that the application was denied.  (*Id.* ¶ 63).  Mr. Hammer confirmed the same by email.  (*Id.* ¶ 64).  During a follow-up phone call with Ms. Hsieh, Mr. Hammer allegedly stated that "the use of the Home by Oxford House – North Bergen violated the Township's zoning ordinances," though he did not explain why.  (*Id.* ¶ 66).

On March 4, 2021, Plaintiff's counsel contacted Defendant to request that the prospective residents be treated as the functional equivalent of a family.  (*Id.* ¶ 68).  On March 9, 2021, Defendant's counsel, Cheyne R. Scott, responded by acknowledging that the prospective residents functioned as the equivalent of a family, but that the Certificate of Occupancy had been denied because it was Defendant's understanding that Plaintiff would be operating a "Community Residence" in a two-family dwelling in violation of N.J.S.A. § 40:55D-66.1 (the "Community Residence provision").[2]  (*Id.* ¶¶ 70–71).  Defendant's counsel noted that "[i]f this were a single-family dwelling, the [Certificate of Occupancy] would have certainly been granted."  (*Id.* ¶¶ 71–72).

---

[2]     The Community Residence provision provides:

> Community residences for persons with developmental disabilities, community shelters for victims of domestic violence, community residences for persons with terminal illnesses, community residences for persons with head injuries, and adult family care homes for persons who are elderly and *adults with physical disabilities* shall be a permitted use in all residential districts of a municipality, and the requirements therefor shall be the same as for *single family dwelling units* located within such districts. N.J.S.A. § 40:55D-66.1

(emphases added).  It is unclear whether the Community Residence provision expressly prohibits the operation of an Oxford House in a two-family dwelling.

By letter dated March 11, 2021, Plaintiff's counsel replied, stating that the prospective Oxford House is not a "Community [r]esidence" as that term is statutorily defined.  (*Id.* ¶ 75). Plaintiff did not receive a response to its March 11, 2021 letter.  (*Id.* ¶ 76).  Over four months later, on July 20, 2021, Plaintiff informed Defendant that it was prepared to take legal action if the Certificate of Occupancy was not granted.  (*Id.* ¶ 76 & D.E. No. 51-9, Ex. I).

**B.    Procedural History**

On October 22, 2021, Plaintiff filed the instant action raising claims under the Fair Housing Act, the Americans with Disabilities Act, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5- 1, *et seq.*  (D.E. No. 1 ("Complaint")).  Along with the Complaint, Plaintiff also filed a request for a temporary restraining order, preliminary injunction, and expedited hearing.  (D.E. No. 1-8).  Plaintiff sought to temporarily enjoin Defendant from preventing disabled men from taking possession of and occupying the Property and requested a preliminary injunction ordering Defendant to issue a Certificate of Occupancy to Plaintiff for operation of an Oxford House.  (*Id.* at 2).  On October 25, 2021, the Court converted Plaintiff's request for temporary restraints to a motion for a preliminary injunction.  (D.E. No. 2).  Expedited discovery commenced.

On June 29, 2022, the Court denied Plaintiff's request for a preliminary injunction.  (D.E. No. 35 ("Prior Opinion")).  The Court found that Plaintiff had failed to establish a likelihood of success on the merits of its claims, as (i) Plaintiff's NJLAD claim was not cognizable in federal court, and (ii) for Plaintiff's FHA and ADA claims, Plaintiff had failed to sufficiently plead facts demonstrating discriminatory intent or disparate impact.  (*Id.* at 5–12).  Plaintiff appealed this Court's decision to the Third Circuit.  On June 12, 2023, the Third Circuit affirmed this Court's denial of a preliminary injunction.  *See Oxford House, Inc. v. Twp. of N. Bergen*, No. 22-2336,

2023 WL 4837835 (3d Cir. July 28, 2023).  The Third Circuit "agree[d] with the District Court that, at this early stage of the case, Oxford House 'has not adduced sufficient evidence to show that the prospective residents' status as handicapped played any role' in the denial of the [Certificate of Occupancy]."  *Id.* at *5.  Further, the Third Circuit agreed with this Court that Plaintiff had failed to sufficiently plead facts demonstrating disparate impact.  *Id.* at *6.

On September 29, 2023, Plaintiff filed the Amended Complaint.  (Am. Compl.).  The Amended Complaint asserts two claims: (i) violation of the FHA (Count I), and (ii) violation of the ADA (Count II).  (*Id.* ¶¶ 94–103).  On October 27, 2023, Defendant moved to dismiss the Amended Complaint pursuant to Federal Rule of Procedure 12(b)(6).  (Motion; *see also* D.E. No. 53-1 ("Mov. Br.")).  The Motion is now fully briefed.  (*See* D.E. No. 56 ("Opp."); D.E. No. 57 ("Reply")).  At the Court's request, both parties submitted supplemental briefing regarding Plaintiff's request for leave to amend in lieu of a dismissal with prejudice.  (See D.E. Nos. 60, 61, & 63).  For the following reasons, the Court GRANTS Defendant's motion to dismiss and dismisses the Amended Complaint *with prejudice*.

## II.   LEGAL STANDARDS

Under Rule 12(b)(6), a complaint may be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v.*

*Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded.  *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The burden is on the moving party to show that the plaintiff has not stated a facially plausible claim.  *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

A complaint must also meet the pleading requirements of Rule 8.  Rule 8 requires that a complaint set forth the plaintiff's claims with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).  Thus, the complaint must contain "sufficient facts to put the proper defendants on notice so that they can frame an answer" to the plaintiff's allegations.  *See Dist. Council 47 v. Bradley*, 795 F.2d 310, 315 (3d Cir. 1986).  As part of this notice pleading, a complaint must plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Twombly*, 550 U.S. at 556.

In evaluating a plaintiff's claims under Rule 12(b)(6), the Court considers the allegations in the complaint, as well as the documents attached thereto and specifically relied upon or incorporated therein.  *See Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.") (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)) (internal quotation marks omitted)).

## III.   DISCUSSION

The FHA, passed by Congress as Title VIII of the Civil Rights Act of 1968 and amended by the Fair Housing Amendments Act of 1988, makes it unlawful "[t]o discriminate in the sale or

rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1).[3]  The ADA prohibits all discrimination based on disability by public entities.  *Id.* § 12132.  The FHA and the ADA's requirements are "essentially the same," allowing courts to apply the FHA analysis to ADA claims.  *Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 914 (D.N.J. 2019); *see also Lapid Ventures, LLC v. Twp. of Piscataway*, No. 10-6219, 2011 WL 2429314, at *5 (D.N.J. June 13, 2011) (citing *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 45–46 (2d Cir. 2002)).  Under both the FHA and the ADA, a plaintiff must show that the prospective residents are "handicapped" as that term is statutorily defined.  *See 901 Ernston Rd., LLC v. Borough of Sayreville Zoning Bd. of Adjustment,* No. 18-2442, 2018 WL 2176175, at *5 (D.N.J. May 11, 2018).[4]

A plaintiff may prove a violation of the FHA or ADA under one of three theories: (i) disparate treatment, or intentional discrimination; (ii) disparate impact; or (iii) failure to make a reasonable accommodation.  *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).  Claims brought under the FHA are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See, e.g.*, *Wind Gap*, 421 F.3d at 176 n.5 (collecting cases).  A plaintiff must first make a prima facie showing under one of the three theories.  *See Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of*

---

[3]     Specifically, the Fair Housing Amendments Act of 1988 ("FHAA") extended the FHA's protections to individuals with handicaps.  Throughout this Opinion, the Court refers to the FHA as amended by the FHAA.

[4]     Plaintiff asserts, and Defendant concedes, that the prospective residents are individuals with handicaps/disabled under the FHA and ADA.  (*See* Am. Compl. ¶ 85; Opp. at 2 n.2; Mov. Br. at 14 n.7 ("The Township does not contest that the prospective Oxford House residents are individuals with handicaps within the meaning of the FHA.")).  And other courts have held that recovering addicts are considered individuals with handicaps.  *See Oxford House, Inc. v. Twp. of Cherry Hill*, 799 F. Supp. 450, 460 (D.N.J. 1992) (holding that residents of the Oxford House met the statutory definition of "handicap" within the meaning of the FHA); *see also United States v. Borough of Audubon*, 797 F. Supp. 353, 359 (D.N.J. 1991) (finding recovering addicts were properly considered "handicapped").  Accordingly, the Court finds that the prospective residents are individuals with handicaps for purposes of the FHA and the ADA.

*Scotch Plains*, 284 F.3d 442, 466–67 (3d Cir. 2002).  Thereafter, the burden shifts to the defendant to show that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives were available.  *Id.* at 467.  Once the defendant has made such a showing, the burden shifts to the plaintiff to establish that the reason asserted by the defendant is merely a pretext for discrimination.  *Id.* at 458.  Here, Plaintiff appears to proceed only under a theory of disparate treatment.[5]  However, because the Amended Complaint speaks in terms of "effect" (*see, e.g.*, Am. Compl. ¶¶ 78 & 81), out of an abundance of caution the Court analyzes disparate impact as well.

### A.    Disparate Treatment

Defendant argues that Plaintiff has failed to sufficiently allege an FHA or ADA claim under a discriminatory treatment theory.  (Mov. Br. at 15–19)  Specifically, Defendant argues that "there are no facts alleged that support an actionable claim because the Township has articulated legitimate nondiscriminatory reasons for rejecting the prospective tenants—namely, OHI's literature and the Community Residence statute."  (*Id.* at 16)  Defendant adds that "there are no factual allegations by OHI of intentional discrimination" and "there is nothing factual in the Amended Complaint that even remotely supports discriminatory intent."  (*Id.* at 17)  According to Defendant, Plaintiff merely "offers conclusory allegations of discrimination without any factual support."  (*Id.*)  Defendant asserts that the fact that there are allegedly "no Oxford Houses in the Township and that within the last five years, the Township has [had] no sober living residences, alcohol/drug rehabilitation facilities, and/or rooming/boarding houses" cannot on its own support

---

[5]    There is no mention in the Amended Complaint of disparate impact or reasonable accommodation.  (*See generally* Am. Compl.)  And in its Opposition Brief, Plaintiff discusses only the standard for a disparate treatment claim and never argues that its Amended Complaint adequately states a disparate impact or accommodation claim.  (*See* Opp. at 16 (discussing only the requirements necessary "[t]o survive a motion to dismiss on a disparate treatment theory")).

an inference of discrimination.  (*Id.* at 18–19).[6]

In opposition, Plaintiff argues that it has adequately alleged facts supporting an inference of discriminatory intent.  (Opp. at 17–18).  According to Plaintiff, these facts include: (i) "[t]he Township's own code official testified that any group of unrelated, disabled persons could occupy one unit of a duplex and would be entitled to a certificate of occupancy, but a group of recovering alcoholics and substance abusers could not" (*id.* at 17); (ii) "[t]hough the code official's authority to grant or deny a [Certificate of Occupancy] was dictated by the Township's [Certificate of Occupancy] and Zoning Ordinances, and Oxford House – North Bergen's proposed use was permitted by the Township's Zoning Ordinance, the code official refused to process the application" (*id.* at 17–18); (iii) Defendant "deliberately and arbitrarily classif[ied] the Home as a 'Community Residence' in direct contravention of the plain language of the MLUL (Am. Compl. ¶83); and (iv) the "Township counsel's application of the community residence provisions of the New Jersey Municipal Land Use Law, N.J.S.A. 40:55D-66.1, necessarily involved consideration of the protected status of the prospective residents of Oxford House – North Bergen as individuals with disabilities" (Opp. at 18).

For the following reasons, the Court agrees with Defendant: Plaintiff has failed to plead facts from which the Court could reasonably infer a discriminatory purpose behind Defendant's actions, which is fatal to Plaintiff's FHA and ADA claims.

Under a discriminatory treatment theory of discrimination, "a plaintiff must demonstrate that some discriminatory purpose was a motivating factor behind the challenged action*." Cmty.*

---

[6]    Defendant further asserts that the Court may, in analyzing the instant Motion, take notice of evidence produced during the expedited discovery conducted prior to the preliminary injunction decision.  (*See, e.g.*, Reply at 1).  At least one court in this district has explicitly rejected such an approach.  *See Matrix Distributors, Inc. v. National Association of Boards of Pharmacy*, No. 18-17462, 2020 WL 7090688, at *6 (D.N.J. Dec. 4, 2020) (citing *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999)).  However, because, as described below, the Court finds that even putting aside the evidence unearthed in discovery, Plaintiff's Amended Complaint fails to state a claim, the Court declines to resolve this issue as unnecessary.

*Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).  The Third Circuit has stated that the Supreme Court's framework for intentional discrimination as laid out in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), is applicable in "disability discrimination cases arising under the FHA and ADA."  *Oxford House*, 2023 WL 4837835 at *3–4.  Under the *Arlington Heights* framework, the plaintiff bears the "burden of proving that discriminatory purpose was a motivating factor" in the challenged decision.  *Arlington Heights*, 429 U.S. at 265–66, 270.  The analysis of whether discriminatory purpose was a motivating factor "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," including "the 'historical background' and 'specific sequence of events' preceding the challenged decision; testimony and contemporary statements by decision-makers; and whether normal procedures were followed."  *Id.* at 266–67.

Here, while the Amended Complaint is replete with conclusory allegations that Defendant's denial of Plaintiff's Certificate of Occupancy application was motivated by discriminatory animus (*see, e.g.*, Am. Compl. ¶¶ 84–89), Plaintiff has not provided any factual allegations to support these naked allegations.  The allegations in the Amended Complaint demonstrate that Defendant asserted that Plaintiff's Certificate of Occupancy application was denied because Defendant viewed the proposed use as violating Community Residence provision.  (*Id.* ¶ 70–71).  Nothing in the Amended Complaint indicates any other reason for denial.  Because the Amended Complaint fails to provide factual allegations supporting an inference of discriminatory intent, Plaintiff's discriminatory treatment claims under the FHA and the ADA must fail.[7]  *See Thorpe v. Twp. of Salisbury, Pennsylvania*, No. 21-2102, 2023 WL 6214028, at *7

---

[7]     Plaintiff appears to argue that discriminatory treatment is evidenced by the terms of the Community Residence provision itself, stating that "Township counsel's application of the community residence provisions of the New Jersey Municipal Land Use Law, N.J.S.A. 40:55D-66.1, necessarily involved consideration of the protected status of the prospective residents of Oxford House – North Bergen as individuals with disabilities."  (Opp. at 18).

(E.D. Pa. Sept. 25, 2023) (noting that the plaintiff's "conclusory allegations of race discrimination . . . are not accepted as true" and finding that "[t]he Second Amended Complaint [was] devoid of any specific factual allegations that would show the Township Defendants acted 'based on' [the plaintiff's] race"); *Liggon v. Simmons Pet Food*, No. 15-1472, 2015 WL 1189561, at *3 (D.N.J. Mar. 13, 2015) ("The Complaints in this case fail to allege even a single specific act by Plaintiff's supervisors which would support Plaintiff's claim.  Plaintiff's allegation of race discrimination is plainly conclusory and as such, does not state a plausible claim for relief."); *Addison v. Amazon.com, Inc.*, No. 22-1071, 2022 WL 2816946, at *4 (D.N.J. July 19, 2022) (dismissing discrimination claim in part because "while Plaintiff alleges in conclusory fashion that she was denied a Process Assistant position because of her age, she offers no other allegations to support that claim"); *431 E Palisade Avenue Real Estate, LLC v. City of Englewood*, No. 19-14515, 2023 WL 6121195, at *7 (D.N.J. Sept. 19, 2023) ("[T]he Second Amended Complaint does not contain sufficient allegations regarding Defendants' intent to discriminate.  At most, Plaintiffs offer the conclusory allegation that Defendants 'intentionally' undertook conduct in violation of the FHA."); *Subhv. Security Guard, Inc.*, No. 23-1462, 2023 WL 8447889, at *5 (D.N.J. Dec. 6, 2023)

---

However, this argument is more properly viewed as a facial attack on the provision itself, rather than as evidence of actual discriminatory intent on the part of Defendant.  *See, e.g.*, *Soc'y House, LLC v. New Jersey*, No. 21-13123, 2023 WL 2535282, at * (D.N.J. Marc. 15, 2023) (describing the differences between disparate treatment claims generally and facial discrimination claims).  And, if Plaintiff wishes to make an argument that the Community Residence provision itself is facially discriminatory and thus unenforceable, it must do so with more than a single sentence in its opposition brief.  *See John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . , but not squarely argued, are considered waived.").  Plaintiff never explicitly mentions a facial discrimination claim in its brief or makes arguments defending any such claims, while it does describe the standard for "surviv[ing] a motion to dismiss on a disparate treatment theory."  (Opp. at 16).  Further, Plaintiff explicitly states that it "is not challenging the validity of the Township's Zoning Ordinance.  Rather, it is challenging whether its interpretation and application of the Zoning Ordinance and applicable New Jersey law as set forth in the Amended Complaint, was done in a discriminatory manner, and, whether it has had a discriminatory effect upon this particular group of disabled persons."  (Opp. at 16).  Thus, if Plaintiff is attempting to make a facial discrimination argument, the Court deems such an argument waived.  *See John Wyeth*, 119 F.3d at 1076 n.6; *cf. Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1197–98 (7th Cir. 1997) ("[The plaintiff]] has not tried to make a disparate-impact case by presenting evidence that the rating system bears more heavily on the disabled and is not justified by the needs of [the defendant's] business.  He mentions the point in a sentence in his brief, but neither develops nor substantiates it; it is therefore waived.").

("Plaintiff offers only conclusory allegations that he was consistently treated less favorably than employees outside his protected class. . . . Such generalized and bare allegations are insufficient to support a theory of disparate treatment discrimination.").

Plaintiff's arguments to the contrary are not persuasive.  First, Plaintiff argues that "[i]nstead of requiring a *prima facie case*, the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."  (Opp. at 13 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)) (internal quotation marks omitted)).  But as the cases Plaintiff cites make clear, while the prima facie case must not be *proven* at the motion to dismiss stage, the complaint must still "set forth sufficient facts to support plausible claims."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).  "[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Id.* at 211; *see also Phillips*, 515 F.3d at 234 ("'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." (citation omitted)).  And courts have regularly dismissed discrimination claims where the complaint does not provide sufficient factual allegations supporting an inference of discriminatory intent.  *See, e.g.*, *Abulkhair v. Office of Atty. Ethics*, No. 16-3767, 2018 WL 1352065, at *11 (D.N.J. Mar. 15, 2018) (finding that the plaintiff's "amended complaint fails to state a claim because he does not state factual allegations suggesting that he was subjected to discrimination 'by reason of his . . . disability'"); *Liggon*, 2015 WL 1189561 at *3 ("Although a complaint of employment discrimination need not contain specific facts establishing a prima facie case to survive a motion to dismiss, it must contain at least 'sufficient factual matter' to support a reasonable inference that Defendant engaged in race discrimination against Plaintiff.").

Second, Plaintiff alleges that there are no other Oxford Houses, sober living facilities, or rooming/boarding houses in the Township, indicating discriminatory intent. (Am. Compl. ¶¶ 53–56). However, while "'a series of official actions taken for invidious purposes' may be relevant to the intent inquiry under *Arlington Heights*," *Oxford House*, 2023 WL 4837835 at *4, the Amended Complaint does not allege a series of *refusals* by Defendant to allow Oxford Houses, sober living facilities, or rooming/boarding houses to be established in the Township. The mere fact that no such facilities exist in the Township, without more, is simply insufficient to plausibly support Plaintiff's allegation of discriminatory intent.

Finally, Plaintiff appears to argue that an inference of discriminatory intent is supported by the fact that (i) OHI's proposed use of the property in question would not have actually violated the Community Residence provision (Opp. at 8–9); (ii) "Mr. Hammer violated the Township's [Certificate of Occupancy] Ordinance by failing to notify the applicant in a writing specifying the reason for the denial" (*id.* at 8); and (iii) "[Mr.] Hammer has admitted that he did not deny [Plaintiff's] application on the basis that Oxford Houses are 'community residences,'" and thus the Township has given inconsistent reasons for the denial (*id.* at 9; Am. Compl. ¶ 74). The Court is not convinced. The possibility that Defendant applied the relevant zoning laws incorrectly[8] does not sufficiently support an inference of discriminatory intent—the alleged misapplication is not blatant, and there are many reasons why Defendant may have misapplied its zoning laws, including

---

[8]   Plaintiff asserts that Defendant "admitted" in its moving brief that Plaintiff's "proposed occupancy of the Home did not violate the Township's Zoning Ordinance." (Opp. at 8). However, the Court cannot locate such an admission in Defendant's brief, at the page Plaintiff cites or elsewhere. (*See generally* Mov. Br.). Additionally, Plaintiff cites to several cases it claims support Plaintiff's contention that OHI residences do not fall within the Community Residences provision. (*See* Opp. at 10–11 (citing *Oxford House –Evergreen v. City of Plainfield*, 769 F. Supp. 1329, 1335 (Dist. N.J. 1991), *Oxford House Inc. v. Township of Cherry Hill*, 799 F. Supp. 450, 452 (Dist. N.J. 1992), and *United States v. Borough of Audubon*, 797 F. Supp. 353, 355 (Dist. N.J. 1991)). However, as Defendant points out (Reply at 3), none of these cases actually analyze the applicability of the Community Residences provision at issue here to OHI residences. These citations are thus of no help to Plaintiff.

13

a simple mistake. *See Oxford House*, 2023 WL 4837835 at *5 ("Whether [Ms.] Scott and the Township read the above statute correctly is largely beside the point. . . . [A] debatable reading of a zoning statute . . . is [not] evidence of intentional discrimination that the Township consulted what it thought to be an applicable state law."). Further, while Mr. Hammer may have minorly deviated from procedure by not denying the Certificate of Occupancy application himself in writing, Plaintiff has not explained how such a minor deviation evidences discriminatory intent.[9] *Cf. id.* at *4 ("Oxford House has not yet demonstrated how [Mr.] Hammer's minor deviation . . . clearly suggests that discrimination was a motivating factor in the denial."). And finally, while Plaintiff baldly asserts in the Amended Complaint that Mr. Hammer "admitted that he did not deny [Plaintiff's] application on the basis that Oxford Houses are 'community residences'" (Am. Compl. ¶ 74), Plaintiff does not explain in the Amended Complaint or in its Opposition what this allegation means, or provide any factual support for the allegation. Plaintiff does not even clarify on what basis Mr. Hammer supposedly admitted to denying its application—Plaintiff does not allege that Mr. Hammer admitted to denying the application on the basis of disability. And even if Mr. Hammer denied the application on a different grounds than those stated by Ms. Scott, that does not necessarily indicate discriminatory intent. Without more, this vague allegation is simply insufficient to support an inference of discriminatory intent.

In sum, the Amended Complaint does not sufficiently allege discriminatory intent, and thus does not state an FHA or ADA discriminatory treatment claim.

**B.    Disparate Impact**

Defendant argues that Plaintiff has also failed to sufficiently allege a disparate impact theory of discrimination. More specifically, Defendant asserts that "there are no facts alleged in

---

[9]      This argument by Plaintiff is especially unpersuasive given the fact that, according to the Amended Complaint, Plaintiff did receive a written, explanatory denial from Ms. Scott. (Am. Compl. ¶¶ 70–71).

the Amended Complaint that support a claim of disparate impact discrimination.  In fact, the Amended Complaint does not even contain the phrase 'disparate impact,' and therefore it appears that OHI has abandoned any such basis for relief."  (Mov. Br. at 19–20).  Plaintiff does not appear to respond to this argument in its Opposition Brief.  Because Plaintiff did not respond to the arguments raised in Defendant's motion, the Court deems waived any arguments in opposition to Defendant's disparate impact argument.  *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's grant of a motion to dismiss on grounds raised in the defendants' motion but not addressed in the plaintiff's opposition); *Woodell v. Coach*, No. 22-2222, 2022 WL 17486262, at *3 (D.N.J. Dec. 7, 2022) ("As Woodell does not address these arguments in his opposition brief, any arguments in opposition are deemed waived.").  The Court therefore finds that Plaintiff has failed to sufficiently allege a disparate impact theory of discrimination.

### C.    Leave to Amend

Plaintiff requests leave to amend in lieu of a dismissal with prejudice.  (Opp. at 14–15 n.5). Defendant objects, arguing that amendment would be (i) futile, as evidenced by Plaintiff's failure to state a claim after amending the original Complaint and after discovery in advance of the preliminary injunction decision; and (ii) improper under Federal Rule of Civil Procedure 16's "good cause" standard, which, Defendant argues, is applicable here because the deadline in the Scheduling Order for amending the pleadings has passed.  (Reply at 10–12; *see also* D.E. No. 63). Plaintiff asserts it has good cause to amend because "it has been diligent in seeking further opportunity to amend in the event the Court finds the Amended Complaint fails to state a claim" and "given the minimal changes to the substantive claims set forth in the original complaint, changes which further bolstered the claims set forth therein, it was not contemplated that

Defendant could file a Motion pursuant to Fed. R. Civ. P. 12(b)(6) in good faith."  (D.E. No. 61 at 3–4).

Denial of leave to amend is warranted in cases of "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The decision whether to grant leave to amend is within the Court's discretion.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  Federal Rule of Procedure 16(b)(4) dictates that "[a] schedule may be modified only for good cause and with the judge's consent."  F.R.C.P. 16(b)(4).  The Third Circuit has made clear that "when a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies."  *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *see also DLJ Mortgage Capital, Inc. v. Sheridan*, 975 F.3d 358, 370 n.52 (3d Cir. 2020).  Good cause under Rule 16(b)(4) may be demonstrated if the "movant shows that the inability to comply with a scheduling order is due to any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order."  *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 558–59 (D.N.J. 2022) (internal quotation marks and citation omitted).

Here, the Court determines that leave to amend would be futile, and therefore unwarranted.  Plaintiff has already amended its complaint once, after both this Court and the Third Circuit found that its original Complaint, in combination with information unearthed in discovery, was insufficient to demonstrate a likelihood of success on the merits of Plaintiff's claims.  In so ruling, both this Court and the Third Circuit provided guidance as to what would be necessary for Plaintiff

to sufficiently state a claim.  Yet Plaintiff still failed to state a claim, and did not explain in its opposition or supplemental briefing how a second amended complaint would fix the deficiencies highlighted above.

Further, in response to the Court's request for supplemental briefing regarding the standard applicable to Plaintiff's request to amend, Plaintiff attached a proposed second amended complaint.  (*See* D.E. No. 61-1).  Defendant appears to argue that doing so was improper.  (D.E. No. 63 at 1 n.1).  However, even if the Court may properly consider the proposed second amended complaint, the Court does not find anything in the proposal that indicates that Plaintiff will be able to fix the deficiencies described in this Opinion.  This further counsels against granting leave to amend.  *See Greiser v. Drinkard*, 516 F. Supp. 3d 430, 436 (E.D. Pa. 2021) ("Amendment would be futile if 'the amended complaint would not survive a motion to dismiss for failure to state a claim.'" (quoting *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014))).  The Court therefore views any further amendment as futile, and thus dismisses the Amended Complaint *with prejudice.*[10]  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (noting that a court need not provide leave to amend where such amendment would be "futile"); *Henry v. City of Allentown*, No. 12-1380, 2013 WL 6409307, at *2 (E.D. Pa. Dec. 9, 2013) ("Although the grant of a motion to dismiss is usually without prejudice, a District Court may exercise its discretion and refuse leave to amend if such amendment would be futile, particularly when a plaintiff has had multiple opportunities to improve the pleadings.").

---

[10]     Because the Court finds that amendment would be futile, it is unnecessary for the Court to address whether Plaintiff has met the Rule 16 good cause standard.

## IV.     CONCLUSION

Based on the foregoing, the Court **GRANTS** the motion to dismiss the Amended Complaint.  (D.E. No. 53).  The Amended Complaint is dismissed *with prejudice*.  An appropriate Order accompanies this Opinion.

*/s/ Esther Salas*
_____

Dated: May 21, 2024                                   Esther Salas, U.S.D.J.